```
                  IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF INDIANA
                            HAMMOND DIVISION

LOIS TRASK,                          )
                                     )
    Plaintiff,                       )
                                     )
vs.                                  )    CAUSE NO. 2:13-CV-1
                                     )
JOHN BISH, et al.,                   )
                                     )
                                     )
    Defendants.                      )
```

## OPINION AND ORDER

This matter is before the Court on the: (1) "Plaintiff's Motion to Voluntarily Dismiss Defendants Joan Bish and Horseshoe Casino From This Case," filed by pro se Plaintiff, Lois Trask, on September 16, 2013 (DE #47); (2) "Defendants, Horseshoe Casino and Joan Bish's Motion to Enforce Settlement Agreement," filed by Defendants, Horseshoe Casino and Joan Bish, on September 27, 2013 (DE #59); and (3) "Plaintiff's Motion to Withdraw Her Motion Requesting Permission to Dismiss Defendant's [sic.] Bish and Horseshow [sic.] Casino From This Case Filed on September 16, 2013," filed by pro se Plaintiff, Lois Trask, on October 2, 2013 (DE #60). Defendants Horseshoe Casino and Joan Bish's Motion to Enforce Settlement Agreement (DE #59) is **HEREBY GRANTED**. The Court **HEREBY FINDS** that Plaintiff entered into an enforceable settlement agreement with Defendants Joan Bish and Horseshoe Casino. Plaintiff is **HEREBY ORDERED** to execute the release attached to

Defendants motion as Exhibit C (DE #59-3) which memorializes the enforceable settlement agreement. The Motion to Voluntarily Dismiss (DE #47) and Motion to Withdraw the motion to dismiss (DE #60) are **DENIED AS MOOT**. This case **REMAINS PENDING** against Defendants, Edgar Rodriguez and Antwan Sullivan.

BACKGROUND

Defendants, Horseshoe Hammond, LLC and Joan Bish (hereinafter "Horseshoe and Bish") filed the instant Motion to Enforce Settlement Agreement on September 27, 2013. Defendants seek to enforce an alleged oral agreement made on September 13, 2013, between pro se Plaintiff and attorney Stacy Vasilak, counsel for Horseshoe and Bish, to settle the case against Horseshoe and Bish for $100 with a check to be issued to Trask's alleged charitable organization, the Trask Foundation. Trask filed an objection, arguing that there was never an agreement or binding contract. (DE #65.) Defendants then filed a reply in support (DE #66) and requested a hearing on this matter.

The Court held a hearing on November 12, 2013, on the instant Motion to Enforce Settlement Agreement (DE #59). Attorney Vasilak testified under oath at this proceeding, Trask testified, and Trask called two other witnesses to testify on her behalf. A lot of extraneous information was presented to the Court at the hearing (including facts like who offered who mints at Plaintiff's

2

deposition), but the Court will attempt to recap only the facts that are pertinent to the instant motion to enforce settlement.

Ms. Vasilak's testimony at the hearing was consistent with her explanation of the facts in her motion and Exhibit A (DE #59-1), a letter dated September 19, 2013, which sets forth in writing Ms. Vasilak's understanding of Plaintiff's oral settlement agreement consummated with Trask on Friday, September 13, 2013. The day after Trask's lengthy deposition, September 13, 2013, Trask called Ms. Vasilak twice before she had even arrived at the office. Trask told the Court during the hearing that she called Ms. Vasilak that morning and told her secretary that she would like to settle the matter.

Ms. Vasilak testified that when she arrived at the office on Friday, September 13, 2013, she received the message and called Trask. Trask told her she had dreamt of her the previous night and realized that her clients never touched her and she wanted to dismiss the claims against Horseshoe and Bish. Then Trask asked if her clients were willing to revoke the eviction (apparently Horseshoe has a list and because of the incident alleged in the complaint where Horseshoe believed Trask stole $20, Trask was put on a list and not allowed to reenter the casino), and whether her clients would provide dinners for her and 4 other senior citizens for a month on Fridays (Trask alleges in her complaint that she is the founder of the Trask Foundation which transports senior

3

citizens to the casino for a meal). (Compl., pp. 1-2.)

Ms. Vasilak called her client, then immediately called Trask back and told her they were not willing to give the seniors free dinners, but they were willing to pay her $100 to settle the case. Ms. Vasilak told Trask she would have to provide her social security number to fill out the paperwork, and Trask stated she did not want to provide her social security number, rather, she asked if they could pay the check to the Trask Foundation and use its tax ID number. Trask also asked if the client would be willing to pay any more money.

Again, Ms. Vasilak called her client, then called Trask back for a third time that day. Ms. Vasilak told her the client was willing to pay the money to the Trask Foundation, but they were not willing to pay any additional money. Additionally, Ms. Vasilak told Trask that the client could not lift her "eviction," that Trask would need to write a letter to the casino making this request. Ms. Vasilak testified at that time, Trask said ok, and they reached an agreement. Trask agreed to a $100 settlement payable to the Trask Foundation, she would sign off on a release, and dismiss Horseshoe and Bish from the case.

Ms. Vasilak then left the office around 4:30 p.m. that Friday and did not return until Monday morning. On Monday morning, Ms. Vasilak played a voicemail message (the recording states it was left at 5:19 p.m. Friday September 13, 2013), from Trask stating,

4

"I think I've had a little change of heart here" and asking Ms. Vasilak to call her. (Hearing Defs.' Ex. D.)

These events are captured in a letter written by Ms. Vasilak to Trask dated September 19, 2013 (Ex. A; DE #59-1). Ms. Vasilak recaps the negotiations, then states:

> You then accepted the offer of $100. You have now attempted to back out of the agreement. You indicated in a voicemail message that you had a change of heart. You entered into a binding agreement to settle the case. At this time, I could file a Motion to Enforce Settlement with the Court since we had both agreed to settle the case for $100. However, it would cost my client additional money to draft the motion and appear in court. Rather than incur additional attorney fees, my client is willing to extend a one-time offer of $250 to settle the case. . . . If this is not acceptable, please be advised that I will likely file the Motion to Enforce Settlement with the Court requesting that the Court order you to comply with your prior agreement to settle this matter against my clients and possibly request sanctions.

*Id.* In response, Ms. Trask wrote a letter back to Ms. Vasilak dated September 24, 2013 (Ex. B; DE #59-2).[1] Trask's letter states, in pertinent part:

> As you know you called me back and stated that your clients could not do anything with the postings nor could they remove the eviction. You also stated that your clients were willing to offer $100.00 to the Trask Foundation, and agree [to] use the T.r.a.s.k Foundation's tax exempt number for a tax write off of $100.00. **We both agreed and I had a change of heart and I called you within 24 hours.**

---

[1] At the end of the letter, Trask included an "affidavit" stating "the above information in this settlement agreement and letter is the truth and nothing but the truth," signed it, and had it sworn before a notary. (Ex. B; DE #59-2.)

5

>   According to my knowledge any agreement can be legally undone within 3 days.

*Id.* (emphasis added). Trask did not agree to the final $250 offer instead of filing a motion to compel, but instead tried to change the amount to $550. (*Id.*, p. 2.) Ms. Vasilak then filed the instant motion to compel the oral settlement agreement for $100.

During the hearing, Trask also testified. She believed the fact that Ms. Vasilak never sent a settlement check was telling. Ms. Vasilak stated she did not send the check because Trask did not execute any release and Trask was trying to back out of the deal. She also questioned Ms. Vasilak that if there was an agreement for $100, why would she then offer to settle for $250, and Ms. Vasilak answered that she extended the last offer of $250 because it would cost the client even more to file the instant motion to enforce the $100 settlement agreement. Trask also claims that she told Ms. Vasilak during the third settlement conversation that an agreement was never finalized, rather, Trask was going to look into writing a letter to the casino about the eviction and then get back to Ms. Vasilak. Finally, Trask also argued that her letter dated September 24, 2013, stated a settlement agreement was made with the Trask Foundation, but that an agreement was never reached with her.

DISCUSSION

In this motion, Horseshoe and Bish's attorney asks the Court to enforce the oral settlement agreement that she believes was

entered into by Trask to settle the case against Horseshoe and Bish for $100, to be made payable to the Trask Foundation.

The district court "has inherent authority to enforce a settlement agreement reached in a case pending before it." *Allen v. Dana*, No. 1:10-cv-281 PPS-RBC, 2011 WL 3163232, at *2 (July 26, 2011) (quoting *Carr v. Runyan*, 89 F.3d 327, 331 (7th Cir. 1996)). An agreement to settle claims in a federal court is enforceable "just like any other contract." *Lynch, Inc. v. SamataMason Inc.*, 279 F.3d 487, 489 (7th Cir. 2002). State law governs whether a contract to settle the case was made, therefore, Indiana law applies here. *Dillard v. Starcon Int'l Inc.*, 483 F.3d 502, 506 (7th Cir. 2007) (holding any uncertainty over whether federal or state law applies to the enforcement of the settlement of a federal suit has been "dispelled; it is state law").

"Under Indiana law, an oral agreement is generally enforceable." *Allen*, 2011 WL 3163232, at *2 (quoting *Zimmerman v. McColley*, 826 N.E.2d 71 (Ind. Ct. App. 2005)). The Supreme Court of Indiana has stated that:

> Indiana strongly favors settlement agreements. And it is established law that if a party agrees to settle a pending action, but then refuses to consummate his settlement agreement, the opposing party may obtain a judgment enforcing the agreement.

*Georgos v. Jackson*, 790 N.E.2d 448 (Ind. 2003) (citations omitted). Settlement agreements are governed by general contract principles, and an "offer, acceptance, plus consideration make up the basis for

7

a contract." *Zimmerman*, 826 N.E.2d at 76. If one party "transmits a clear and unambiguous settlement offer which is accepted by the other party, the parties have reached a binding settlement agreement." *Pohl v. United Airlines, Inc.*, 110 F.Supp.2d 829, 837 (S.D. Ind. 1999) (quotation omitted). Determining whether there has been a meeting of the minds "is a factual matter to be determined from all the circumstances," and the Court should refer "not to the parties' subjective intents but their outward manifestation of it." *Zimmerman*, 826 N.E.2d at 77. Finally, the Seventh Circuit has stated that "[s]ome litigants in pursuing settlement of their claims hold the belief that they can change their mind at any time before they actually sign the settlement agreement. As this case illustrates, that perception is often unfounded in the law." *Pohl v. United Airlines, Inc.*, 213 F.3d 336, 337 (7th Cir. 2000) (affirming district court's enforcement of settlement).

The Court finds that Ms. Vasilak and Trask did indeed enter into a settlement agreement on September 13, 2013. Following several rounds of telephone conversations, Ms. Vasilak offered $100 to release the claims against her clients, Horseshoe and Bish, and the offer even included the technical and negotiated detail that the check be made payable to the Trask Foundation. The offer was accepted by Ms. Trask orally on the telephone and this Court finds that there was a meeting of the minds. Although Ms. Trask disputes

that she accepted the offer, this Court finds the hearing testimony of Ms. Vasilak, an attorney and officer of the Court, to be consistent and credible. Additionally, Ms. Vasilak's letter dated September 19, 2013, just days after the events, consistently sets forth the negotiations and specifically states that at the end, Trask "then accepted the offer of $100." (Ex. A; DE #59-1.) In her own sworn letter, written on September 24, 2013, Trask states that "[w]e both agreed" to $100 payable to the Trask Foundation's tax exempt number and that then she "had a change of heart and [Trask] called [Ms. Vasilak] within 24 hours." (Ex. B; DE #59-2.) Indeed, the voicemail message left by Trask on Ms. Vasilak's phone Friday, September 13, 2013, at 5:19 p.m. states that Trask had a change of heart.

Trask's change of heart after she had agreed to the oral settlement does not undo the agreement. A party who has previously authorized a settlement remains bound by its terms even if she changes her mind. *Glass v. Rock Island Ref. Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986) (affirming enforcement of settlement agreement). As such, a party's later unhappiness with a settlement is "neither here nor there." *Allen*, 2011 WL 3163232, at *2.

"As long as the person receives something of value in exchange for her own promise or detriment, the courts will not inquire into the adequacy of consideration." *Baptist v. City of Kankakee*, 481 F.3d 485, 491-92 (7th Cir. 2007) (quoting *Wagner v. NutraSweet Co.*,

9

95 F.3d 527, 532 (7th Cir. 1996)).  Here, Plaintiff agreed to receive $100, made payable to the Trask Foundation, as she had requested, which is sufficient consideration.  "[A] party to a settlement cannot avoid the agreement merely because he subsequently believes the settlement is insufficient."). *Taylor v. Gordon Flesch Co.*, 793 F.2d 858, 862 (7th Cir. 1986).

In sum, from the communications between the parties and based upon the evidence presented at the hearing, there was an offer, acceptance, and consideration existed.  Additionally, the Court finds that the settlement was knowingly and voluntarily made by Plaintiff.  There is no evidence of fraud or duress.  A meeting of the minds existed between the parties and they agreed on the essential terms of the settlement - that $100 would be payable to the Trask Foundation in exchange for Trask releasing her claims against Horseshoe and Bish.  Once the agreement was reached on September 13, 2013, Trask's later change of heart and regrets cannot avoid the agreement - they are irrelevant and do not affect the validity and enforceability.  Trask remains bound by the terms of the enforceable settlement agreement.

CONCLUSION

Defendants Horseshoe Casino and Joan Bish's Motion to Enforce Settlement Agreement (DE #59) is **HEREBY GRANTED**.  The Court **HEREBY FINDS** that Plaintiff entered into an enforceable settlement

10

agreement with Defendants Joan Bish and Horseshoe Casino. Plaintiff is **HEREBY ORDERED** to execute the release attached to Defendants motion as Exhibit C (DE #59-3) which memorializes the enforceable settlement agreement. The Motion to Voluntarily Dismiss (DE #47) and Motion to Withdraw the motion to dismiss (DE #60) are **DENIED AS MOOT**. This case **REMAINS PENDING** against Defendants, Edgar Rodriguez and Antwan Sullivan.

**DATED: November 19, 2013**            **/s/ RUDY LOZANO, Judge**
                                         **United States District Court**