```
IN THE UNITED STATES DISTRICT COURT
   FOR THE NORTHERN DISTRICT OF INDIANA
              HAMMOND DIVISION

LOIS TRASK,                    )
                               )
Plaintiff,                     )
                               )
vs.                            )   CAUSE NO. 2:13-CV-1
                               )
JOHN BISH, et al.,             )
                               )
                               )
Defendants.                    )
```

**OPINION AND ORDER**

This matter is before the Court on the "State Defendants' Motion for Summary Judgment," filed by Defendants, Edgar Rodriguez and Antwan Sullivan, on March 11, 2014 (DE #97). For the reasons set forth below, the motion for summary judgment (DE #97) is **GRANTED**. The Clerk is hereby **ORDERED** to **DISMISS** the claims against Defendants, Edgar Rodriquez and Antwan Sullivan, **WITH PREJUDICE** and to **CLOSE** this case.

BACKGROUND

Defendants filed the instant motion for summary judgment on March 11, 2014 (DE #97). Defendants also filed the requisite notice of summary judgment filing because Plaintiff is pro se. (DE #99). Thereafter, Plaintiff filed a motion to dismiss without prejudice (DE #101), but it was not signed by all parties, and the Defendants objected to a dismissal without prejudice. (DE #103.)

On May 6, 2014, this Court entered an order denying Plaintiff's motion to dismiss without prejudice (DE #104), and ordering Plaintiff to file a response to the instant motion for summary judgment on or before May 21, 2014. The Court warned Plaintiff that failure to file a response on or before June 2, 2014, could result in a summary ruling. (DE #104.)

To date, Plaintiff has not filed a response. Local Rule 7-1.(d)(4) provides that, in the case of summary judgment, "[t]he court may rule on a motion summarily if an opposing party does not file a response before the deadline." Thus, a summary ruling is appropriate. However, "[s]trict enforcement of [local rules and deadlines] does not mean that a party's failure to submit a timely filing automatically results in summary judgment for the opposing party." *Wienco, Inc. v. Katahn Assoc., Inc.*, 965 F.2d 565, 568 (7th Cir. 1992). Rather, that failure "causes all factual assertions alleged by the opposing party to be deemed admitted" and this Court must still "make the further finding that given the undisputed facts, summary judgment is proper as a matter of law." *Id.*

DISCUSSION

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *NUCOR Corp. v. Aceros Y Maquilas de Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes "demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant must support its assertion that a fact is genuinely disputed by citing to particular parts of materials in the record. Fed. R. Civ. P. 56(c); *Becker v. Tenenbaum-Hill Assoc., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect* the outcome of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v.*

*Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (emphasis in original) (citing *Anderson*, 477 U.S. at 248).

"A party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley Country REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 955 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate. In this situation, there can be "'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

It is noteworthy that Trask is a pro se plaintiff. However, her pro se status does not relieve her from complying with the procedural rules associated with summary judgment. *See Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817-18 (7th Cir. 2004) (requiring pro se plaintiff to strictly comply with Northern District of Illinois Local Rule 56.1); *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001) (explaining that pro se litigants must still comply with procedural rules).

4

Undisputed Findings of Fact

Local Rule 56-1 provides that a party opposing summary judgment must file a response brief and "any materials that the party contends raise a genuine dispute." L.R. 56-1(b)(1)(B). Additionally, the response brief or its appendix must specifically "include a section labeled 'Statement of Genuine Disputes' that identifies the material facts that the party contends are genuinely disputed so as to make a trial necessary." L.R. 56-1(b)(2).

In this case, Plaintiff failed to file an opposition, and therefore did not dispute any of the facts identified by Defendants in their statement of material facts, and did not set forth any additional facts or evidence. Consequently, the Court must take the facts in Defendants' statement as admitted. L.R. 56-1; *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir. 1994) (noting the Seventh Circuit has routinely sustained "the entry of summary judgment when non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

Because the facts are undisputed, the Court will only briefly summarize them. Defendant, Sullivan, is a gaming agent employed by the Indiana Gaming Commission. (Sullivan Aff. ¶¶ 1-2.) Defendant, Rodriguez, is also a gaming agent employed by the Indiana Gaming Commission. (Rodriguez Aff. ¶ 1.) Collectively, Defendants Sullivan and Rodriguez are referred to as the "State Defendants."

5

On January 3, 2012, Trask was at the Horseshoe Casino. Video footage from the casino shows that while at a change machine, Plaintiff picked up a twenty-dollar bill off the floor. (McDonald Aff. ¶ 4; Ex. A.) Although Trask claims she believed the twenty dollars to be her money, the video footage clearly shows that the twenty-dollar bill belonged to the man in front of her at the change machine. *Id.* When he walked away from the change machine, he dropped the bill, and then Trask picked it up. (Trask Dep., pp. 69, 83, 169-70; McDonald Aff. Ex. A.) After picking up the twenty dollar bill, Trask went to gamble. (Trask Dep., p. 73; McDonald Aff.)

Several hours later, while gambling, Trask was approached by Joan Bish, who was a security supervisor at the Horseshoe Casino. (Trask Dep., p. 74; McDonald Aff. Ex. A.) Bish coaxed Trask to accompany her to the security podium, where they met up with Defendants Rodriguez and Sullivan. (Trask Dep., pp. 74-76; McDonald Aff. Ex. A.) Defendant Sullivan told Trask she believed she had taken twenty dollars, and Trask became verbally combative, agitated and un-cooperative. (Sullivan Aff. ¶ 6.) Trask also made multiple phone calls on her cell phone near the security booth. (*Id.* ¶ 7.) At some point, Rodriguez asked Trask to discontinue her call, and to go with him to the security office. (Rodriguez Aff. ¶ 8.) Trask continued with her call and was uncooperative. (*Id.;* Sullivan Aff. ¶ 9.) When Plaintiff failed to cooperate, Rodriguez

6

temporarily confiscated her cell phone and pulled the sleeve of her coat to encourage her cooperation. (Rodriguez Aff. ¶ 9.) Trask was escorted to the interior security room, and during the lengthy walk, at times, Rodriguez placed a hand on her arm and/or shoulder of her coat to guide her to the back room. (Sullivan Aff. ¶ 9; Rodriguez Aff. ¶ 10.)

In the security office, Rodriguez told Trask they needed to pat her down for their safety and hers, and Trask told them to go ahead. (Rodriguez Aff. ¶¶ 13-14; Sullivan Aff. ¶ 14.) Rodriguez helped Trask out of her floor-length coat, patted the coat down, and placed it in a chair beside her. (Sullivan Aff. ¶ 14; Rodriguez Aff. ¶¶ 13-14.) Sullivan ultimately did not search/conduct a pat down of Trask's person. (Sullivan Aff. ¶¶ 13-15.) Trask could not locate her identification, so she was escorted to her car to retrieve her identification, and the Defendants confiscated five dollars she had in the car. (Trask Dep., p. 111-15; Sullivan Aff. ¶ 16; Rodriguez Aff. ¶ 16.) After returning to the security office, Defendant Sullivan told Trask she was free to go, but they would be keeping the five dollars, and that she was not allowed to come back to the casino because they believed Trask had taken money. (Trask Dep., pp. 114-16). Bish asked Trask to sign some papers, but Trask refused. (*Id.*, p. 116.) Trask was escorted to her car and asked to leave immediately. (*Id.*, p. 117.)

7

Trask filed the instant lawsuit on January 2, 2013. According to Sherry Green, information analyst and records custodian for the Indiana Gaming Commission, Trask did not file a tort claim notice against Indiana Gaming Agents Sullivan or Rodriguez. (Green Aff. ¶ 5.) The agency has no record of a tort claims notice from Trask regarding any matter. *Id.* Additionally, the Indiana Attorney General's Office did not receive a tort claim notice from Lois Trask regarding any matter. (Ward Aff. ¶ 5.)

Tort Claims

Defendants Rodriguez and Sullivan are entitled to judgment as a matter of law on Trask's tort claims because she failed to comply with the requisite notice requirements of the Indiana Tort claims Act (the "ITCA").

The ITCA provides that a claim against a political subdivision is barred unless the prescribed notice is filed within 180 days after the loss occurs. Ind. Code 34-13-3-8; *see also Davidson v. Perron*, 716 N.E.2d 29, 33-34 (Ind. Ct. App. 1999). Specifically, notice must be filed: (1) with the governing body of that political subdivision; and 2) the Indiana Political Subdivision Risk Management Commission. Ind. Code 34-13-3-8. "The notice requirements of the ITCA apply not only to suits against political subdivisions but also to suits against employees of a political subdivision." *Davidson*, 716 N.E.2d at 33-34 (citing *VanValkenburg*

*v. Warner*, 602 N.E.2d 1046, 1048 (Ind. Ct. App. 1992)). The claimant bears the burden of establishing substantial compliance with the notice provisions and it is a question of law. *Chang v. Purdue Univ.*, 985 N.E.2d 35, 52 (Ind. Ct. App. 2013).

Because the State Defendants have raised the defense of failure to comply with the notice requirements, the burden is on Trask to prove compliance with the ITCA notice provisions. *Hedges v. Rawley*, 419 N.E.2d 224, 227 (Ind. Ct. App. 1981). Here, Defendants argue "Trask failed entirely to file the required tort claim notice with the Indiana Gaming commission or the Indiana Attorney General prior to initiating this suit," (DE #98, p. 12), and Trask has not controverted this argument or provided any evidence that she did file notice. Trask's failure to file a tort claims notice bars her from asserting state tort claims against Defendants Sullivan and Rodriguez. *See, e.g., Meury v. Eagle-Union Community School Corp.*, 714 N.E.2d 233 (Ind. Ct. App. 1999). Judgment is therefore appropriate for the State Defendants on all of the asserted tort claims including, but not limited to assault, battery, fraud, civil conspiracy, infliction of emotional distress, false imprisonment, malicious prosecution, negligence, and defamation (humiliation).

Section 1983 Claims

Trask alleges in the complaint that Defendants Sullivan and

Rodriguez searched and unlawfully detained her (Compl. ¶¶ 4,5), and that Rodriguez used excessive force in violation of her constitutional rights.

The Fourth Amendment states it is "[t]he right of the people to be secure in their person, houses, papers, and effects against unreasonable searches and seizures[.]"  U.S. Const. Am. IV.  To determine whether a cause of action has been stated, courts determine whether the alleged conduct constituted a search or seizure, and if so, whether it was unreasonable in light of the facts.  A person has been "seized" for purposes of the Fourth Amendment "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave."  *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).  "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application, and its proper application requires careful attention to the facts and circumstances of each particular case."  *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1010 (7th Cir. 2000) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Probable cause is not necessary for police to conduct an investigatory stop, limited in scope and executed by reasonable means.  *Terry v. Ohio*, 392 U.S. 1, 18-20 (1968).  To make an investigatory stop, an officer needs only reasonable suspicion supported by articulable facts that criminal activity is afoot.

*Terry*, 392 U.S. at 30; *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002). Reasonable suspicion is "some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity." *United States v. Jackson*, 300 F.3d 740, 745 (7th Cir. 2002) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

The reasonableness of a *Terry* stop is evaluated by looking at "whether the officers' actions were justified at the inception of the stop" and "whether the stop was reasonably related in scope to the circumstances that justified the stop in the first place." *Jackson*, 300 F.3d at 745 (citing *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000)). The totality of circumstances known to the officer at the time of the stop must be considered in making the evaluation. *Id.* (citing *Swift*, 220 F.3d at 506).

Based upon the totality of the circumstances, the State Defendants had reasonable suspicion to stop and detain Trask. Indeed, they witnessed her on the casino video taking money that clearly did not belong to her. (McDonald Aff. Ex. A.) There is no evidence she was detained longer than necessary to investigate the alleged theft, obtain her identification, and attempt to recover the money. As such, the investigative stop was justified at its inception and "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20.

Trask also argues that she was unlawfully searched in violation of her constitutional rights. "The Fourth Amendment allows privacy interests protected by the Fourth Amendment to be balanced against the interests of officer safety." *Wilson v. State,* 745 N.E.2d 789, 792 (Ind. 2001) (citing *Terry*, 392 U.S. at 23-27). To justify a pat down, *Terry* dictates an objective standard that "a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27; *United States v. Rivers*, 121 F.3d 1043, 1045 (7th Cir. 1997).

In this case, upon arriving in the security office, Defendant Rodriguez assisted Trask in removing her oversized floor length coat and conducted a pat down search of the coat - Rodriguez attested he searched the coat for "safety reasons." (Rodriguez Aff. ¶ 14.) No one patted down her person. In light of the totality of circumstances, it was reasonable to pat down Trask's coat. Trask had been brought back to a small room where she could at various times be alone with the State Defendants, alone with casino employees, or by herself in the room. There is testimony that she was verbally combative, agitated and uncooperative. (Sullivan Aff. ¶ 6; Rodriguez Aff. ¶ 8.) As such, it was reasonable for Defendant Rodriguez to conduct a pat down of the coat for his safety and that of the others involved. *See Wilson*, 745 N.E.2d at 792 (holding that "when an officer places a person

into a patrol car that will be occupied by the officer or other persons, there is a significantly heightened risk of substantial danger" and that "it is generally reasonable for a prudent officer to pat-down persons placed in his patrol car, even absent a belief of dangerousness particularized to the specific detainee"). Because Defendant Rodriguez's actions in patting down the coat were reasonable, as a matter of law, there was no violation of Trask's Fourth Amendment rights.[1]

Last, Trask claims Defendant Rodriguez used excessive force when he escorted her across the casino floor to the security office. Excessive force claims brought against law enforcement officers which stem from an arrest, investigatory stop, or other seizure of a citizen are analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Abdullahi v. City of Madison*, 423 F.3d 763, 768 (7th Cir. 2005).

> The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. The

---

[1] Even assuming, *arguendo*, the search of the coat was not reasonable, Trask's claim would still fail because she gave consent to the search. *See, e.g.*, *United States v. Duran*, 957 F.2d 499, 501 (7th Cir. 1992) (Warrantless searches are constitutionally permissible when "an authorized individual voluntarily consents to the search".). There is no evidence in the record that Trask's consent was not freely and voluntarily given. When Rodriguez told Trask they needed to pat her down for their safety and hers, Trask told them to go ahead. (Rodriguez Aff. ¶¶ 13-14; Sullivan Aff. ¶ 14.)

> question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.

*Tibbs v. Chicago*, 469 F.3d 661, 665 (7th Cir. 2006) (internal quotations marks, brackets, and citations omitted). Here, Trask was seen on video taking money that did not belong to her. After she was approached by casino security personnel and Defendants Rodriguez and Sullivan, she became agitated and uncooperative. When asked to accompany the gaming agents to the security office, Trask was resistant, and continued to speak on her cell phone despite State Defendants' instructions to discontinue her call. (Sullivan Aff. ¶¶ 6-9; Rodriguez Aff. ¶¶ 6-9.) Trask was resistant to go to the security office, so Defendant Rodriguez pulled lightly on her coat in the direction of the office and had to occasionally place a hand on the arm and/or shoulder of her coat to guide her to the back. (Rodriguez Aff. ¶¶ 9-10; Sullivan Aff. ¶ 9; McDonald Aff. Ex. A; Trask Dep., pp. 88-90.) This can be seen in the video footage, and was reviewed carefully by this Court, and it was the only "force" exerted by Rodriguez. (McDonald Aff. Ex. A.) Under the circumstances, the force was reasonable.

Finally, Trask alleges a constitutional claim against the State Defendants pursuant to 42 U.S.C. § 1986, which states that "every person having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to

14

be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses to do so, if such wrongful act be committed, shall be liable to the party injured . . . for all damages caused by such wrongful act" and all claims brought under section 1986 are "premised on a violation of section 1985." *Sims v. Kernan*, 29 F.Supp.2d 952, 957 (1998) (citing *Rhodes v. Mabus*, 676 F.Supp. 755, 760 (S.D. Miss. 1987)). Section 1985(3) of Title 42 of the United States Code "prohibits persons from conspiring to deprive any person, or any class of persons, of their constitutional rights." *Vega Marrero v. Consorcio Dorado-Manati*, 552 F.Supp.2d 157, 163 (D.P.R. 2007). To state a viable claim under section 1985, a plaintiff "must allege the existence of (1) a conspiracy, (2) conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." *Id.* (citing *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996); *Concepcion v. Zorrilla*, 309 F.Supp.2d 201, 213 (D.P.R. 2004)). Equal protection, as used in this context, makes reference to actions motivated by "some racial, or . . . otherwise class-based, invidiously discriminatory animus." *Id.* (citing *Concepcion*, 309 F.Supp.2d at 214).

Here, Trask makes no mention of Section 1985 in her Complaint.

15

She brings no specific claim under it nor does she reference any of its provisions. Instead, Trask simply alleges conspiracy and claims she believes she was treated differently because of her age and race. Trask provides absolutely no facts to support these assertions. Moreover, Trask asserts her claim under Section 1986 against *all* Defendants. (Compl. ¶ 11.) "Section 1986 allows a suit to be brought against persons who are not members of the conspiracy but who are aware of it." *Craig v. Cohn*, 80 F.Supp.2d 944, 947 (2000) (citing *Hampton v. City of Chicago*, 484 F.2d 602, 610 (7th Cir. 1973)). If all defendants to a suit are alleged to be members of the conspiracy, then there can be no valid § 1986 claim. (*Id.* at 947.) Consequently, because Trask brings her Section 1986 claim absent a viable factual basis rooted in Section 1985, stemming from a discriminatory animus, and her Complaint alleges that the defendants *all* conspired against her, her claim fails and judgment shall be entered in favor of State Defendants.

Conclusion

For the reasons set forth below, the motion for summary judgment (DE #97) is **GRANTED**. The Clerk is hereby **ORDERED** to **DISMISS** the claims against Defendants, Edgar Rodriquez and Antwan Sullivan, **WITH PREJUDICE** and to **CLOSE** this case.

16

**DATED: June 17, 2014**                    **/s/ RUDY LOZANO, Judge**
                                            **United States District Court**